IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TECHRADIUM, INC., | § | |
|     Plaintiff | § | |
| Vs. | § | CIVIL ACTION NO. 2-08-CV-00214-TJW |
| | § | |
| | § | |
| BLACKBOARD CONNECT INC., and | § | JURY TRIAL DEMANDED |
| BLACKBOARD INC., | § | |
|     Defendants | § | |
| | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Blackboard, Inc.'s ("Blackboard") Motion for Preliminary Injunction. (Cause No. 2:09-cv-00042, Dkt. No. 4). Blackboard moves to enjoin TechRadium, Inc. ("TechRadium") from making, using, selling, or offering for sale in the United States its Immediate Response Information System ("IRIS") product, which Blackboard claims infringes U.S. Patent No. 6,816,878 ("the '878 patent") owned by Blackboard. The Court held a hearing in the matter on March 24, 2009. At the hearing, the Court DENIED Blackboard's application for preliminary injunction. The Court also DENIED TechRadium's Motion to Strike Certain Testimony of Dr. Mark T. Jones and to Strike Paragraphs of his Supplemental Declaration. (Dkt. Nos. 38, 41). This opinion discusses the reasons for the Court's decision.

**I. Background**

TechRadium first filed a case against Blackboard in this Court on May 19, 2008, alleging infringement of its three patents. (Cause No. 2:08-cv-00214). In December 2008, Blackboard acquired a related patent, and filed a case against TechRadium in a Virginia court, alleging

1

infringement of Blackboard's '878 patent. Finding the Virginia litigation to be a compulsory counterclaim in the Marshall litigation, the Virginia court transferred the case to this Court. Blackboard immediately dismissed the transferred case, and filed a similar action in the Lufkin Division of this district. Judge Ron Clark transferred Blackboard's newly filed case back to this division. (Cause No. 2:09-cv-00042). TechRadium also filed a declaratory judgment action on Blackboard's patent in this Court. (Cause No. 2:09-cv-35). All three cases have now been consolidated into cause number 2:08-cv-00214. (Dkt. No. 13).

Blackboard, through its Blackboard Connect division, is a provider of "alert notification solutions" for educational and government organizations. Blackboard is based in Washington D.C. The "Connect" products are used by institutions to send alert messages to their members. For example, Blackboard notes, the Houston Independent School District uses the Connect product to send out audio or text messages to the cell phones of parents, informing them of events at school. Similarly, the City of Lufkin uses Blackboard's products to inform affected residents of happenings within the city. Blackboard did not originally develop these products and was not previously in this business. Blackboard's Connect products were originally developed by NTI Group, Inc. ("NTI"), a company that Blackboard acquired in January 2008. Blackboard bought the '878 patent, to which NTI had a non-exclusive license, on December 12, 2008. Blackboard claims to have approximately 66% of the alert notification market.

The '878 patent is directed to an "Alert Notification System." The patented system can provide alerts to multiple persons or locations. *See* '878 Patent, at Abstract. The system stores a database of communication identifiers, such as telephones numbers, pager numbers, or e-mail addresses to which the alerts can be sent. *See id*. at 4:37-46, 14:3-24, 17:12-25. The system

disclosed in the '878 patent "responds to commands identifying alerts to be delivered to affected geographic areas or schools/organizations, by retrieving communications identifiers [and] establishing a communications connection using each retrieved communication identifier, and delivering the alert." *See id.* at 11:10-49; 24:4-11. Authorized personnel, such as a school administrator, may initiate alerts "via telephone or Internet interaction with the system." *Id.* The alerts may then be delivered via telephone, pager, e-mail, or other media. *See id.* at 6:37-40; 11:19-26; 12:22-32.

TechRadium is a Sugar Land, Texas based company whose "IRIS" product competes with Blackboard's Connect products. TechRadium also owns patents related to this technology. These are U.S. Patent Nos. 7,130,389, 7,174,005 and 7,362,852 (the "TechRadium patents"). According to TechRadium's website, IRIS provides "immediate response or mass notification services for both emergency and non-emergency situations," and can "broadcast notifications through multiple forms of communications to hundreds of thousands of people quickly." IRIS can be accessed via any web-browser and can send "messages to computers, fax machines, phones, and wireless PDAs and digital pagers." IRIS presently has about 5% of the alert notification market.

Blackboard contends that IRIS is priced lower than the Connect products and that Blackboard has lost customers to TechRadium.[1] Blackboard contends that TechRadium competes with Blackboard not only with its IRIS product, but also licenses IRIS for sale under various private labels, such as the "ADT Select Link" sold by ADT Security Systems, Inc. Blackboard therefore urges the Court to enjoin TechRadium from using and selling the IRIS

product during the pendency of this litigation. Because the Court finds that Blackboard has an adequate remedy at law for any harm that it has argued and that equities in this case favor TechRadium, the Court denies Blackboard's application.

**II. Discussion**

In a patent infringement matter, a party seeking equitable preliminary injunctive relief must meet four elements: (1) substantial likelihood of success on the merits, (2) irreparable harm should the injunction not issue, (3) balance of hardships in movant's favor, and (4) effect on the public interest. *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.*; *see also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 842 (Fed. Cir. 2008) (finding that the district court abused its discretion by denying a preliminary injunction motion without balancing all four factors). At the stage of the preliminary injunction, before the issues of fact and law have been fully explored and finally resolved, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court. *Abbott Labs. v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006).

---

[1] Two examples of such loses that Blackboard points to include a pilot project by the Florida Department of

**1. Blackboard is unlikely to succeed on the merits of its infringement claim**

Proving the likelihood of infringement requires a two-step analysis. First, the claims must be construed to determine their proper scope and meaning. *See Markman v. Westview Instruments*, 52 F.3d 967, 1000 (Fed. Cir. 1995). Second, the accused device is compared to the properly construed claims to determine if each claim limitation is met either literally or by a substantial equivalent. *See id.* at 976.

**a. Claim Construction**

Blackboard argues that it is likely to prove at trial, by a preponderance of the evidence, that TechRadium's infringes claim 43[2] of the '878 patent through its use, sale, and offer for sale of IRIS.

Claim 43 recites:

> A system for providing time-sensitive announcements to a plurality of persons and/or locations, comprising:
>
> a database and a tandem database each storing a plurality of communications identifiers, and storing an association of each communications identifier with data useful for determining whether particular time-sensitive information is to be communicated to said communications identifier,
>
> a computer system and a tandem computer system each responding to a command identifying an announcement to be announced to interested persons and/or locations, by comparing said command to said data useful for determining whether particular timesensitive information is to be communicated to said persons and/or locations, retrieving from said database, individual matching communications identifiers associated with persons and/or locations to whom said time-sensitive announcement is to be communicated in response to the command, and [*c*] establishing a communications

---

Education, and the business of the San Antonio school district.
[2] Blackboard also alleges infringement of dependant claims 64, 65, 89, 140, and 142. However, because the Court fails to find a likelihood of infringement of the independent claim, it does not discuss these claims further.

connection using each retrieved communications identifier and delivering said timesensitive announcement via said communications connection,

the tandem database and tandem computer system in communication with the database and computer system and sharing information regarding announcements to be provided by either of them,

wherein said comparing and retrieving steps are performed after receipt of said command.

'878 Patent, 27:23-50.

Blackboard contends in its reply that the whole dispute between the parties on Blackboard's motion can be resolved by the Court's construction of the terms "a database and a tandem database" and "a computer system and a tandem computer system" in claim 43. The Court therefore construes these terms in order to determine Blackboard's likelihood of success on its infringement claims against TechRadium. It is undisputed that as originally claimed, claim 43 did not include this "tandem" element. This functionality was claimed separately in claim 179. *See* Response, Ex. H, at 50. In an office action dated March 5, 2004, the Examiner rejected claim 43 as anticipated by U.S. Patent No. 6,169,476 granted to John Flanagan ("Flanagan"). *See* Response, Ex. I, at 6. In response to the office action, the Applicant deleted dependent claim 170 and amended claim 43, adding the requirement of tandem computers and tandem databases, which are in communication with each other while sending out the alert notifications. *See* Response, Ex. K, at 3.

TechRadium's proposed construction focuses on limiting the scope of claim 43 based on this amendment. TechRadium's proposed construction requires that the "tandem" terms imply a continuous, four way, lock-step, direct communication between both computers and both databases. TechRadium argues that the '878 patent specification and the notice of allowance

support its narrowing construction.[3] While the Court does not agree that each of TechRadium's proposed restrictions is mandated here, the prosecution history of the '878 patent does indeed significantly narrow the scope of claim 43 as compared to the original claim.

First, there is sufficient support in the specification to show that inventors envisioned significant interoperability between the computer and the tandem computer. Specifically, the specification discloses:

> Systems 100 and 100' are in continuous communication . . . to insure that all alert notifications are received by both systems, and thereafter one system is tasked with handling each notification. The systems also continuously communicate to maintain synchronization of the databases handled by the respective database servers of the respective servers. In the event of a failure at one of the tandem systems, all existing requests for alert notification will be handled by the other system to insure that the alers are delivered appropriately in spite of network failure.

'878 patent, Col. 12, line 11-22.

With regard to its proposed "lock-step" requirement, TechRadium argues that the term "tandem" cannot simply mean "redundant."[4] TechRadium correctly notes that the use of redundant computers and databases has long been known in the art. Further, it notes that the '878 patent specification refers to the second computer system as a "second redundant . . . tandem system." Therefore, it argues that equating "tandem" to "redundant" would simply render this usage nonsensical. Consequently, TechRadium's interpretation of "tandem" requires

---

[3] TechRadium relies heavily for its construction and infringement arguments on the report of its expert Dr. Gavin Clarkson. Blackboard argues that, under Federal Circuit law, Dr. Clarkson is not a qualified expert in the technology of the '878 patent. The Court notes that the preliminary injunction application is a matter for the Court to decide and the Court gives appropriate weight to Dr. Clarkson's testimony based on his qualifications, or any lack thereof, in the pertinent art.

[4] Techradium urges the Court to adopt Merriam Webster's definition of the term "tandem" as "a group of two or more arranged one behind the other or used or acting in conjunction."

"lock-step" operation of the two systems. The Court finds this interpretation unreasonable.[5] All that the claim requires is that both the computers, as well as both the databases, be capable of operating simultaneously.

In rebuttal, Blackboard, while agreeing that "tandem" cannot mean mere redundancy of computers and databases, argues that the Court should adopt the meaning as understood by the Examiner. Blackboard points to a March 2004 office action, wherein the examiner rejected the applicant's dependent claim 179, citing to Flanagan as also teaching use of tandem computers and databases. Flanagan does not recite the term "tandem," but does disclose use of redundant databases. Blackboard argues that the Examiner must have understood the term "tandem" to simply mean this redundant use of databases. According to Blackboard, what the Examiner differentiated in allowing claim 43 was that the two computer systems listed therein are redundant "of each other," and the two databases are redundant "of each other." Blackboard claims this is a sufficient difference to allow claim 43 over Flanagan. The Court rejects the argument that the examiner's use of the term in his office action is necessarily consistent with his use in the notice of allowance.

Blackboard further argues that the applicant has claimed as separate dependent claims, each of the requirements proposed by TechRadium, and *Phillips* mandates these limitations not be read into the scope of the independent claim. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to

---

[5] Blackboard points out that Dr. Clarkson's understanding of the term "tandem" to also mean "lock-step" comes from the online encyclopedia, Wikipedia.org. The Court agrees with Blackboard that Wikipedia disclaims any validity of the content listed on its website, and is therefore not a reliable source of technical information.

a presumption that the limitation in question is not present in the independent claim"). Specifically, Blackboard points to the following two dependent claims:

- The system of claim 43 wherein said computer systems communicate to synchronize data in said databases. '878 patent, Claim 181.
- The system of claim 181 wherein said computer system tasks said tandem computer system to concurrently deliver announcements with said computer system. '878 patent, Claim 182.

The Court finds that the dependent claims simply claim scope to additional functionality that the two computers, working in tandem, may be capable of. Blackboard cannot point to anything in the specification that indicates that the inventors claimed, or were allowed to claim, a system that operates through the use of a single computer tasked with sending out the alerts, in absence of a second tandem computer. To the contrary, upon being persuaded to allow claim 43 with the "tandem" requirement,[6] the Examiner wrote in his allowance: "Specifically, the prior art does not teach the tandem database and tandem computer system in communication with the database and computer system and sharing information regarding warnings to be provided by either of them." *See* Response, Ex. L. The Court agrees with TechRadium that this Notice of Allowance requires that "either" the computer system/database pair or the tandem computer system/tandem database pair be able send out notifications. The Notice emphasizes this requirement by using the phrase "warnings to be provided by either of them." Therefore, the Court finds that both systems have to be capable of performing the tasks listed in claim 43.

Finally, TechRadium argues that this notice of allowance also requires that all four components – the two computers and the two databases – have the capability to communicate with each other. The Court finds no support for this argument. As noted above the embodiment disclosed in the specification lists computers communicating with their respective databases, and the dependent claim 181 claims the ability to synchronize the two databases. Therefore, Claim 43 does not require both databases to communicate with each other. Given the Examiner's intent to limit the scope of the claim, the Court is of the opinion that each of the two computers have to be able to communicate with both databases.

Based on this analysis, the Court's construction of Claim 43, as it relates to the terms "a computer system and a tandem computer system" and "a database and a tandem database" is as follows:

> Two computer systems that have a data connection between them, and each have a data connection with a first database and a second database, such that each computer system is capable of performing a plurality of functions simultaneously; said second database being the tandem database, and containing the same information as the first database; both databases being capable of responding to requests from said computer systems simultaneously.

### b. Infringement

With regard to infringement, TechRadium contends that it does not use more than one computer to send out alerts, and that its use of redundant databases does not fall within the architecture of tandem databases claimed by the inventors of the '878 patent. TechRadium primarily argues that Claim 43 is not broad enough to cover mere redundancy. The IRIS

---

[6] The Court notes that the applicant had two interviews with the Examiner to get past the rejection. Immediately following the second interview, the Applicant amended Claim 43 without further comment.

architecture makes of use multiple computer systems, each performing specialized tasks, connected in an network. *See* Decl. of Darren Rose, Response, Ex. F. On one end, a Server Load Balancer ("SLB") system determines which of the multiple web-server computers should be assigned the task of processing an incoming "transaction." *Id*. The processing servers process the information collected from a user and send it to a primary database for delivery to recipients. *Id*. IRIS has multiple "delivery gateways" that continually monitor the database and pull information to be delivered to recipients. *Id*.

Blackboard's infringement theory is based on the TechRadium's mirroring of the database server employed in IRIS.[7] *See* Reply, Decl. of Mark Jones. TechRadium uses Microsoft's SQL Server 2005 database product. Blackboard contends that upon failure of the primary database server in IRIS, the mirror takes over the operation. Since the two database servers run on two separate computer systems, Blackboard argues that this suffices to meet the "tandem" limitation of Claim 43. The Court rejects this argument. According to Microsoft's own documentation of the database mirroring feature of its SQL 2005 server, when a database mirroring session is operating in a "High Availability" mode,[8] the primary database server and the mirror are in continuous two-way communication with each other, allowing the mirror server to update its database every time the primary server "hardens" its primary database log records to disk. *See* RON, TALMAGE, MICROSOFT SQL SERVER 2005, DATABASE MIRRORING IN SQL SERVER 2005, Reply, Ex. 6, at 2. If the primary database server fails and becomes unavailable,

---

[7] The Court notes that although Dr. Jones' report alleged infringement of Claim 43 by various components of IRIS, Blackboard restricted its infringement arguments at the hearing to the operation of the IRIS database servers. Therefore, the Court evaluates Blackboard's likelihood of success under this single theory of infringement. *See* Reply, Decl. of Mark Jones, at 5-7.
[8] It is undisputed that IRIS employs Microsoft's SQL Server 2005 in "High Availability" operating mode.

an automatic failover occurs and the mirror database server becomes the primary server. *Id*. at 3. Microsoft estimates that this failover process can be accomplished in a matter of seconds. *Id*. at 4. Undeniably, the Court can rely on Microsoft's own description of the operation of its SQL server product. Apparently, the "High Availability" mode of Microsoft's SQL 2005 server is not designed such that both the primary server and the mirror are "capable of performing a plurality of functions simultaneously." Therefore, the Court finds that given the Court's construction of the "tandem" terms, it is unlikely that Blackboard will succeed in proving that the architecture used by TechRadium in IRIS meets each of the limitations of Claim 43.[9]

**2. Blackboard will suffer no irreparable harm if the injunction is not issued**

Blackboard claims to have approximately 66% of the alert notification market. TechRadium argues that there is no evidence that TechRadium has had any effect on Blackboard's sales until now. TechRadium's market share is approximately 5%, and the remainder of the market share is held by others. TechRadium argues that in such a multiplayer market, Blackboard cannot prove a clear nexus between any sales losses it has suffered and the sales of IRIS.[10]

Blackboard argues that, absent a preliminary injunction, it will continue to lose customers to TechRadium during the pendency of this case, and that such a loss of customers is likely to be

---

[9] Because the Court finds that Blackboard has failed to demonstrate a likelihood of success on TechRadium's infringement of its patent, the Court does not find the need to address whether TechRadium has raised a substantial question of invalidity as to Blackboard's patent.
[10] Further, TechRadium argues that Blackboard did not own the patent when it lost two bids to TechRadium, and therefore, could not have been irreparably harmed by such activity. Along the same lines, TechRadium argues that the prior owners sought to license the '878 patent to the industry and knowingly permitted TechRadium to operate for several years without ever asserting the patent against it. The Court does not find these arguments persuasive in determining the harm that Blackboard will suffer in the near future.

a permanent loss of market share.[11] Further, it contends that if allowed to continue, TechRadium will irrevocably capture a large segment of the military market. The Court, however, finds that Blackboard's conceived harm is not such that it could not be adequately remedied by an award of money, should Blackboard be ultimately successful at trial. *See Eli Lilly and Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1578-79 (Fed. Cir. 1996) (affirming the district court's finding that the movant failed to establish irreparable harm based, in part, on the loss of research opportunities). Further, to help mitigate any alleged harm that Blackboard argues about, the Court hereby sets an early trial in this case.

### 3. The balance of hardships does not favor Blackboard

IRIS is the only product TechRadium sells. TechRadium contends that an injunction prohibiting TechRadium from selling this product would shut the company down and force it to lay off its employees, irrevocably crippling the company. In contrast, TechRadium contends, there is little harm to Blackboard. With 66% market share in a fairly mature market, Blackboard can show little effect on its business during the immediate future. Therefore, this factor does not help Blackboard's application.

### 4. Public Interest supports a denial of Blackboard's Motion

According to TechRadium, a great number of its customers are school districts. It contends that the IRIS system is being used by schools to assure the safety and welfare of students and school personnel in the face of conditions requiring emergency notification of parents, administrators, and first responders. Further, TechRadium's CEO, Ryan Rodkey, avers

---

[11] At the hearing, Blackboard contended that this would amount to $9 million in potential sales lost to TechRadium.

that the U. S. Military has employed the system as an emergency alert system for communicating the welfare and condition of military personnel.  *See* Response, Ex. A.  TechRadium contends that a preliminary injunction would put thousands of students and military personnel at risk.  TechRadium, therefore, makes strong case that public interest would be harmed by an injunction.  This factor does not support the grant of a preliminary injunction.

**III.     Conclusion**

The Court has carefully evaluated the arguments made by both parties and finds that all four factors weigh against a grant of a preliminary injunction in this case.  Therefore, Blackboard's application for a preliminary injunction is DENIED.

The Court will hold a hearing on claim construction issues in this case on September 17, 2009, and jury selection is set for January 4, 2010.  The parties are ORDERED to meet and confer, and provide the Court with a proposed docket control order based on these dates within fifteen days (15) of this order.

SIGNED this 29th day of April, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE